# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 7, 2015        Decided August 21, 2015

No. 15-5018

HOME CARE ASSOCIATION OF AMERICA, ET AL.,
APPELLEES

v.

DAVID WEIL, SUED IN HIS OFFICIAL CAPACITY,
ADMINISTRATOR, WAGE & HOUR DIVISION, ET AL.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00967)

*Alisa B. Klein*, Attorney, U.S. Department of Justice, argued the cause for appellants. With her on the briefs were *Vincent H. Cohen, Jr.*, Acting U.S. Attorney, *Beth S. Brinkmann*, Deputy Assistant Attorney General, and *Michael S. Raab*, Attorney.

*Eric T. Schneidermann*, Attorney General, Office of the Attorney General for the State of New York, *Barbara Underwood*, Solicitor General, *Seth Kupferberg*, Assistant Attorney General, were on the brief for *amici curiae* States of New York, et al. in support of appellants.

*Kate Andrias* was on the brief for *amici curiae* Paraprofessional Healthcare Institute and 26 Consumer and Policy Organizations in support of appellants.

*Arthur B. Spitzer* was on the brief for *amici curiae* Women's Rights, Civil Rights, and Human Rights organizations and scholars in support of appellants.

*Judith A. Scott*, *Nicole G. Berner*, *Renee M. Gerni*, *Craig Becker*, *Lynn Rhinehart*, *William Lurye*, and *Claire Prestel* were on the brief for *amici curiae* American Federation of Labor and Congress of Industrial Organizations, et al. in support of appellants.

*Jonathan S. Massey* was on the brief for *amici curiae* Members of Congress in support of appellants.

*Daniel B. Kohrman* was on the brief for *amicus curiae* AARP in support of appellants.

*Samuel R. Bagenstos* was on the brief for *amicus curiae* the American Association of People with Disabilities in support of appellants.

*Maurice Baskin* argued the cause for appellees. With him on the brief was *William A. Dombi*.

*Derek Schmidt*, Attorney General, Office of the Attorney General for the State of Kansas, *Jeffrey A. Chanay*, Chief Deputy Attorney General, *Toby Crouse*, Special Assistant Attorney General, *Mark Brnovich*, Attorney General, Office of the Attorney General for the State of Arizona, *Samuel S. Olens*, Attorney General, Office of the Attorney General for the State of Georgia, *Bill Schuette*, Attorney General, Office of the Attorney General for the State of Michigan, *Adam Paul*

*Laxalt*, Attorney General, Office of the Attorney General for the State of Nevada, *Wayne Stenehjem*, Attorney General, Office of the Attorney General for the State of North Dakota, *Herbert H. Slatery*, *III*, Attorney General, Office of the Attorney General for the State of Tennessee, *Ken Paxton*, Attorney General, Office of the Attorney General for the State of Texas, and *Brad D. Schimel*, Attorney General, Office of the Attorney General for the State of Wisconsin were on the brief for *amici curiae* States of Kansas, et al.

*Stephanie Woodward* was on the brief for *amici curiae* ADAPT and the National Council On Independent Living in support of appellees.

*Michael Billok* was on the brief for *amicus curiae* the Consumer Directed Personal Assistance Association of New York in support of appellees.

*Michaelle L. Baumert* and *Henry L. Wiedrich* were on the brief for *amici curiae* Members of Congress in support of appellees.

Before: GRIFFITH, SRINIVASAN and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*:   The Fair Labor Standards Act's protections include the guarantees of a minimum wage and overtime pay.  The statute, though, has long exempted certain categories of "domestic service" workers (workers providing services in a household) from one or both of those protections.  The exemptions include one for persons who provide "companionship services" and another for persons who live in the home where they work.  This case concerns

the scope of the exemptions for domestic-service workers providing either companionship services or live-in care for the elderly, ill, or disabled. In particular, are those exemptions from the Act's protections limited to persons hired directly by home care recipients and their families? Or do they also encompass employees of third-party agencies who are assigned to provide care in a home?

Until recently, the Department of Labor interpreted the statutory exemptions for companionship services and live-in workers to include employees of third-party providers. The Department instituted that interpretation at a time when the provision of professional care primarily took place outside the home in institutions such as hospitals and nursing homes. Individuals who provided services within the home, on the other hand, largely played the role of an "elder sitter," giving basic help with daily functions as an on-site attendant.

Since the time the Department initially adopted that approach, the provision of residential care has undergone a marked transformation. The growing demand for long-term home care services and the rising cost of traditional institutional care have fundamentally changed the nature of the home care industry. Individuals with significant care needs increasingly receive services in their homes rather than in institutional settings. And correspondingly, residential care increasingly is provided by professionals employed by third-party agencies rather than by workers hired directly by care recipients and their families.

In response to those developments, the Department recently adopted regulations reversing its position on whether the FLSA's companionship-services and live-in worker exemptions should reach employees of third-party agencies who are assigned to provide care in a home. The new

regulations remove those employees from the exemptions and bring them within the Act's minimum-wage and overtime protections. The regulations thus give those employees the same FLSA protections afforded to their counterparts who provide largely the same services in an institutional setting.

Appellees, three associations of home care agencies, challenged the Department's extension of the FLSA's minimum-wage and overtime provisions to employees of third-party agencies who provide companionship services and live-in care within a home. The district court invalidated the Department's new regulations, concluding that they contravene the terms of the FLSA exemptions. We disagree. The Supreme Court's decision in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), confirms that the Act vests the Department with discretion to apply (or not to apply) the companionship-services and live-in exemptions to employees of third-party agencies. The Department's decision to extend the FLSA's protections to those employees is grounded in a reasonable interpretation of the statute and is neither arbitrary nor capricious. We therefore reverse the district court and remand for the grant of summary judgment to the Department.

I.

The FLSA, 29 U.S.C. §§ 201 *et seq.*, generally requires covered employers to pay a minimum wage, and also requires payment of overtime compensation at an hourly rate equaling 150% of normal pay for weekly work hours beyond forty. 29 U.S.C. §§ 206(a), 207(a)(1). The Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, 88 Stat. 55, extended the Act's minimum-wage and overtime protections to employees in "domestic service," *i.e.*, service in a household. 29 U.S.C. §§ 206(f), 207(l). The congressional committee reports accompanying the 1974 Amendments

explained that domestic service "includes services performed by persons employed as cooks, butlers, valets, maids, housekeepers, governesses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use." S. Rep. No. 93-690, at 20 (1974); H.R. Rep. No. 93-913, at 35-36 (1974).

The 1974 Amendments also exempted defined categories of domestic-service workers from certain FLSA protections. This case concerns two of those exemptions. First, 29 U.S.C.§ 213(a)(15), pertaining to companionship services, provides that the FLSA's minimum-wage and overtime requirements shall not apply with respect to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." Second, 29 U.S.C. § 213(b)(21), pertaining to live-in domestic-service workers, provides that the Act's overtime protections shall not apply with respect to "any employee who is employed in domestic service in a household and who resides in such household." The 1974 Amendments included a broad grant of rulemaking authority empowering the Secretary of Labor to "prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act." 1974 Amendments, Pub. L. No. 93-259, § 29(b), 88 Stat. 76.

In 1975, the Department of Labor adopted implementing regulations. Those regulations addressed the treatment of companionship-services workers and live-in domestic-service workers who are employed by third-party agencies. The regulations provided that the § 213(a)(15) exemption for companionship services and the § 213(b)(21) exemption for live-in workers included individuals "who [were] employed by an employer other than the family or household using their

services." 29 C.F.R. § 552.109(a), (c) (2014). The regulations also defined the term "companionship services" to mean "those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs." 29 C.F.R. § 552.6 (2014). Additionally, "[s]uch services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services." *Id.*

Subsequently, in 1993, 1995, and 2001, the Department, citing dramatic changes in the provision of home care services, proposed regulatory amendments to remove third-party-agency employees from the scope of the companionship-services and live-in worker exemptions. *See* Application of the Fair Labor Standards Act to Domestic Service, 66 Fed. Reg. 5481 (Jan. 19, 2001); Application of the Fair Labor Standards Act to Domestic Service, 60 Fed. Reg. 46,797 (Sept. 8, 1995); Application of the Fair Labor Standards Act to Domestic Service, 58 Fed. Reg. 69,310 (Dec. 30, 1993). In 2001, for example, the Department explained that "workers who today provide in-home care to individuals needing assistance with activities of daily living are performing types of duties and working in situations that were not envisioned when the companionship-services regulations were promulgated." 66 Fed. Reg. at 5482. None of those proposals to alter the regulatory treatment of third-party-agency employees gained final adoption.

In 2002, the companionship-services portion of the third-party-employer regulation became the subject of a legal challenge brought by an employee of a third-party agency who sought overtime and minimum-wage protections. Ultimately, the Supreme Court rejected her challenge, upholding the regulation's inclusion of third-party-employed

workers within the Act's companionship-services exemption. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007). The employee argued that the framework of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), should not apply, and that, if it did, the statutory exemption unambiguously applied only to workers employed directly by private households, thus rendering the third-party regulation invalid. The Court disagreed. It held that the "the text of the FLSA does not expressly answer the third-party-employment question"; that Congress had granted authority to the Department to resolve the issue; and that the Department's answer—*i.e.*, its regulation including employees who work for third-party agencies within the companionship-services exemption—was reasonable. *Coke*, 551 U.S. at 168, 171.

In 2013, the Department again considered reversing course on the third-party-employer issue, this time adopting a final regulation doing so. "In the 1970s," the Department observed, "many individuals with significant care needs were served in institutional settings rather than in their homes." Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454, 60,455 (Oct. 1, 2013). But "[s]ince that time, there has been a growing demand for long-term home care." *Id.* "As more individuals receive services at home rather than in nursing homes and other institutions, workers who provide home care services . . . perform increasingly skilled duties" analogous to the professional services performed in institutions. *Id.* The Department concluded that, "given the changes to the home care industry and workforce" since the original 1975 regulations, the new regulation would "better reflect Congressional intent" behind the 1974 Amendments. *Id.* at 60,454. As authority for the new regulation, the Department cited, in addition to the statutory exemptions themselves, the general grant of

rulemaking authority in § 29(b) of the 1974 Amendments. *Id.* at 60,557.

Under the new regulation, third-party employers of companionship-services and live-in employees may no longer "avail themselves" of the statutory exemptions. With respect to companionship services, the revised regulation states that "[t]hird party employers of employees engaged in companionship services . . . may not avail themselves of the minimum wage and overtime exemption provided by section [2]13(a)(15)." 29 C.F.R. § 552.109(a) (2015). With respect to live-in workers, the revised regulation states that "[t]hird party employers of employees engaged in live-in domestic service employment . . . may not avail themselves of the overtime exemption provided by section [2]13(b)(21)." *Id.* § 552.109(c). The new rules also narrow the Department's definition of "companionship services," which has the effect of limiting the scope of the Act's companionship-services exemption. Among other adjustments, the regulation now states that "[t]he term companionship services . . . includes the provision of care"—such as "meal preparation, driving, light housework, managing finances, assistance with the physical taking of medications, and arranging medical care"—only if that care "does not exceed 20 percent of the total hours worked." *Id.* § 552.6(b) (2015).

In 2014, appellees, a group of trade associations representing third-party agencies that employ home care workers, filed a lawsuit challenging the regulations under the Administrative Procedure Act. In December 2014, shortly before the new regulations were to take effect, the district court granted partial summary judgment to appellees, declaring invalid the revised third-party-employer regulation. *Home Care Ass'n of Am. v. Weil*, No. 14-cv-967 (RJL), 2014 WL 7272406 (D.D.C. Dec. 22, 2014). The court ended its

analysis at *Chevron* step one, finding that the Department's decision to exclude a class of employees from the exemptions based on the "nature of their employer[s]" contravened the plain terms of the statute. *Id.* at *5-6. In light of the district court's vacatur of the third-party-employer regulation, appellees could make use of the companionship-services exemption, and they therefore gained standing to attack the Department's revised definition of companionship services. In a separate opinion, the district court vacated that definition, finding that its twenty-percent limitation on hours of "care" contravened both the text of the statutory exemption and congressional intent. *Home Care Ass'n of Am. v. Weil*, No. 14-cv-967 (RJL), 2015 WL 181712, at *4-5 & n.5 (D.D.C. Jan. 14, 2015). The Department now appeals.

## II.

We review the new third-party-employer regulation pursuant to the two-step *Chevron* framework. *See Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2439 (2014). If "Congress has directly spoken to the precise question at issue," then "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. But "if the statute is silent or ambiguous with respect to the specific issue," we analyze "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

The Department contends that its revised third-party-employer regulation lies within the scope of its rulemaking authority under the general agency delegation in § 29(b) of the 1974 Amendments, as confirmed by the Supreme Court's decision in *Coke*. The Department further argues that the new regulation is a reasonable exercise of the Department's authority at *Chevron* step two and is neither arbitrary nor

capricious.  We agree with the Department and uphold the regulation.

## A.

Appellees contend that the new third-party-employer regulation fails at the first step of *Chevron*.  In their view, the FLSA does not delegate to the Department the authority to exclude a class of employers from the Act's companionship-services and live-in worker exemptions.  That argument is foreclosed by the Supreme Court's decision in *Coke*.

The Court in *Coke* confronted three distinct statutory arguments about the applicability of the companionship-services exemption to employees of third-party providers.  First, respondent Coke, the employee, urged that the 1974 Amendments "clearly express[] congressional intent to exempt only companions employed directly by private households," not companions employed by third-party agencies.  Brief for Respondent at 5, *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007) (No. 06-593), 2007 WL 930417, at *5 (capitalization altered).  Second, various amici, including the appellees here, made the opposite argument—*viz.*, that the "unambiguous language" of the companionship-services exemption *requires* applying it to employees of third-party providers.  Brief for National Association for Home Care & Hospice, Inc. as Amicus Curiae in Support of Petitioners at 3, *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007) (No. 06-593), 2007 WL 527341, at *3.  Finally, the petitioner home care agency, supported by the United States, put forward an intermediate position.  In their view, the text of the statutory exemption "does not address third-party employment," leaving the agency discretion to resolve the matter at *Chevron* step two.  Brief for United States as Amicus Curiae Supporting Petitioners at 8,

17-18, *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007) (No. 06-593), 2007 WL 579234, at *8, *17-18; *see* Brief for Petitioners at 10-12, *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007) (No. 06-593), 2007 WL 549107, at *10-12.

The Supreme Court rejected the competing arguments that the statutory text unambiguously compels a result in either direction. The Court held that "the text of the FLSA does not expressly answer the third-party-employment question" and that there is also no "clear answer in the statute's legislative history." *Coke*, 551 U.S. at 168. Instead, the question of "whether to include workers paid by third-parties within the scope of the [exemption's] definitions" is among the "details" that the statute leaves to the "agency to work out." *Id.* at 167. In support of that conclusion, the Court referenced the Secretary of Labor's general authority "to prescribe necessary rules, regulations, and orders with regard to the amendments made by the Act." 1974 Amendments, Pub. L. No. 93-259, § 29(b), 88 Stat. at 76; *see Coke*, 551 U.S. at 165 (citing § 29(b)). Because that grant of authority "provides the Department with the power to fill . . . gaps through rules and regulations," and because the "subject matter of the regulation in question concerns a matter in respect to which the agency is expert," the treatment of third-party employers under the exemption, the Court concluded, had been "entrusted [to] the agency." *Coke*, 551 U.S. at 165.

The Court's conclusion precludes appellees' *Chevron* step-one argument. It is true that *Coke* addressed a challenge solely to the companionship-services portion of the prior regulation, while this case also encompasses a challenge to the live-in worker provision of the revised regulation. But the *Coke* Court's characterization of third-party-employer treatment as an "interstitial matter . . . entrusted [to] the

agency to work out" equally applies to the Department's authority under the FLSA's live-in worker exemption. Indeed, Congress framed the companionship-services and live-in worker exemptions with precisely parallel construction and phrasing. Section 213(a)(15) exempts from the FLSA's minimum-wage and maximum-hour requirements "*any employee employed in domestic service employment* to provide companionship services for individuals who . . . are unable to care for themselves." 29 U.S.C. § 213(a)(15) (emphasis added). And § 213(b)(21) symmetrically exempts from the Act's maximum-hour requirements "*any employee who is employed in domestic service* in a household and who resides in such household." 29 U.S.C. § 213(b)(21) (emphasis added). Both provisions invite further specification, the details of which "turn upon the kind of thorough knowledge of the subject matter and ability to consult at length with affected parties that an agency, such as the DOL, possesses." *Coke*, 551 U.S. at 165, 167-68.

Appellees also stress that the companionship-services exemption provides for the Secretary to "define[] and delimit[]" its terms, while the live-in worker exemption contains no similar supplement. *Compare* 29 U.S.C. § 213(a)(15), *with id.* § 213(b)(21). The Supreme Court in *Coke*, however, did not focus on the "define[] and delimit[]" language in § 213(a)(15). Rather, in holding that the Department had authority to "fill [the third-party-employment] gap[] through rules and regulations," the Court relied on § 29(b)'s general grant of authority to establish rules implementing the 1974 Amendments. *Coke*, 551 U.S. at 165. The Court invoked the precise terms of § 29(b)'s general grant of implementation authority—the authority "to prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act"—in the portion of its opinion holding that the third-party-employment question had been

delegated to the Secretary. *Id.* And although the Court also cited 29 U.S.C. § 213(a)(15) as a source of agency authority alongside § 29(b), the "define[] and delimit[]" language, unlike the language of § 29(b), was neither reproduced nor highlighted. *See Coke*, 551 U.S. at 165. Because § 29(b) "gives an agency broad power to enforce *all* provisions" of the 1974 Amendments—including both § 213(a)(15) and § 213(b)(21)—the Department's "authority is clear" with respect to both FLSA exemptions. *Gonzales v. Oregon*, 546 U.S. 243, 258 (2006) (emphasis added) (citing *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005)).

Appellees get no further in arguing that, even if the regulation upheld in *Coke* amounted to a valid exercise of the Department's authority to "define" the terms of the companionship-services exemption, the revised regulation does not. Appellees posit that, while the Secretary may *define* terms within the phrase "employee employed in domestic service employment to provide companionship services," the Department exceeded its authority when, instead of "defining" that phrase, it issued a rule providing that third-party employers "may not avail themselves" of the exemption. 29 C.F.R. § 552.109(a). That argument fails for the reason already given: The Department's authority does not flow solely from the "define[] and delimit[]" language of § 213(a)(15), but instead, as the *Coke* Court emphasized, comes from the general grant provided by § 29(b) to "work out" the statutory "gaps" through rules and regulations. *Coke*, 551 U.S. at 165.

Indeed, in finding it within the Department's "broad grant" of authority to decide "whether to include workers paid by third parties within the scope" of the companionship-services exemption, the Court explicitly contemplated that the

full range of potential outcomes lay within the agency's discretion. *Id.* at 167-68. "Should the FLSA cover *all* companionship workers paid by third parties?," the Court asked. *Id.* at 167. Or should it instead "cover *some* such companionship workers . . . ? Should it cover *none*?" *Id.* All of those possibilities, the Court made clear, were the Department's to assess. *Id.*

Appellees' remaining step-one arguments are unavailing. Appellees contend that the Department's new rules conflict with the legislative history of the FLSA amendments. But the *Coke* Court explicitly found that the "statute's legislative history" provides no "clear answer" to the "third-party-employment question." *Coke*, 551 U.S. at 168. And while appellees seek to attach significance to Congress's amendment of other subsections of § 213 in 1996 and 1999 without altering either § 213(a)(15) or § 213(b)(21), the *Coke* Court, having been advised about that congressional inaction, *see* Brief for the United States as Amicus Curiae at 20 n.5, *Coke*, 551 U.S. 158 (No. 06-593), apparently found it immaterial to the *Chevron* step one inquiry. Appellees similarly argue that Congress's more recent inaction in the face of proposed legislation to exclude third-party employers from the statutory exemptions shows congressional intent to allow employers to continue making use of the exemptions. But "failed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994) (internal quotation marks omitted). And here, Congress's failure to enact legislation does nothing to upset *Coke*'s holding that "the text of the FLSA does not expressly answer the third-party-employment question." 551 U.S. at 168.

For those reasons, we reject appellees' challenge to the regulations at *Chevron* step one.  The Department has the authority to "work out the details" of the companionship-services and live-in worker exemptions, and the treatment of third-party-employed workers is one such detail.  *Id.* at 165-68.

B.

Because we conclude that Congress delegated authority to the Department to determine whether employees of third-party agencies should fall within the scope of the companionship-services and live-in worker exemptions, we proceed to *Chevron* step two.  At that step, "'if the implementing agency's construction is reasonable,' a court must 'accept the agency's construction of the statute.'"  *Fin. Planning Ass'n v. SEC*, 482 F.3d 481, 498 (D.C. Cir. 2007) (quoting *Brand X*, 545 U.S. at 980).  The Department's interpretation readily satisfies that standard.

Appellees' *Chevron* step-two argument largely rehashes their step-one submission.  Their primary contention is that "the total exclusion of third party employers from availing themselves of access to the companionship and live-in exemptions cannot be a permissible construction of the Act."  Appellees' Br. 39-40.  *Coke* belies that argument.  As the Court explained, "the text of the FLSA does not expressly answer the third-party-employment question," leaving it to the Department to determine whether the FLSA should apply to "all," "some," or "none" of the home care workers paid by third parties.  *Coke*, 551 U.S. at 167-68.

The Department's resolution of that question is entirely reasonable.  The Department explained that bringing domestic-service workers paid by third-party employers

within the FLSA's protections would be consistent with congressional intent. The 1974 Amendments "intended to expand the coverage of the FLSA to include all employees whose vocation was domestic service," the Department observed, 78 Fed. Reg. at 60,454, not to "roll back coverage for employees of third parties who already had FLSA protections," *id.* at 60,481. Because Congress's overriding intent was to bring more workers within the FLSA's protections, the Department determined that the companionship-services and live-in exemptions from coverage should "be defined narrowly in the regulations to achieve the law's purpose." *Id.* at 60,482. In the Department's view, a narrow construction of the statutory exemptions draws further support from "the general principle that coverage under the FLSA is broadly construed so as to give effect to its remedial purposes, and exemptions are narrowly interpreted . . . to those who clearly are within the terms and spirit of the exemption." *Id.* (citing *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). The Department thus decided to interpret the exemptions as "narrow" ones that target individuals who are "not regular breadwinners or responsible for their families' support." *Id.* at 60,481 (citing H. Rep. No. 93-913, p. 36).

The Department's understanding is consistent with Congress's evident intention to "include within the coverage of the Act all employees whose *vocation* is domestic service." S. Rep. No. 93-690, at 20 (emphasis added); *see* H.R. Rep. No. 93-913, at 33-34, 36 (similar). Both the 1974 Senate and House Reports, in explaining the purpose behind the companionship exemption and another exemption covering "casual babysitting services," drew a contrast between "casual" employees and employees whose "vocation is domestic service." S. Rep. No. 93-690, at 20; H.R. Rep. No. 93-913, at 33-34, 36. And one Senator, when commenting on

the expansion of the FLSA to cover domestic-service employees, contrasted the type of assistance provided by a "neighbor" or an "elder sitter" with "the professional domestic who does this as a daily living." 119 Cong. Rec. 24,801 (July 19, 1973) (statement of Sen. Burdick). It is true that the Department points to no legislative materials concerning the live-in exemption in particular. But it was reasonable for the Department to assume that Congress intended the live-in exemption to operate in much the same way as the similarly worded companionship exemption—*i.e.*, to exclude from the FLSA's scope casual employees who are "not regular bread-winners or responsible for their families' support." 78 Fed. Reg. at 60,481 (citing S. Rep. No. 93-690, p. 20; H.R. Rep. No. 93-913, p. 36).

Based on its understanding of congressional intent, the Department reasoned that the 1974 Congress would have wanted the FLSA's protections to extend to the home care workers of today who are employed by third-party agencies. "[T]oday, few direct care workers are the 'elder sitters' envisioned by Congress when enacting the exemption," the Department observed. 78 Fed. Reg. at 60,482. Instead, home care workers employed by third parties are professional caregivers, often with training or certification, who work for agencies that profit from the employees' services. *See id.* at 60,455; National Employment Law Project, *Comments to Proposed Revisions to the Companionship Exemption Regulations, RIN 1235-AA05* 14-15 (Mar. 21, 2012), *reprinted in* J.A. at 593-94. In light of the "purpose and objectives of the [1974] amendments as a whole," 78 Fed. Reg. at 60,482, the Department decided "to prohibit third party employers from claiming [the companionship and live-in] exemptions," *id.* at 60,480. The Department thereby applied the FLSA's protections to workers for whom such employment is a "vocation." S. Rep. No. 93-690, at 20. We

find the Department's resolution to be fully reasonable and see no basis for setting it aside at *Chevron* step two.

## C.

Appellees contend that, even if the new third-party regulation passes muster at *Chevron* step two, it should still be invalidated as arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). According to appellees, the Department "failed to provide an adequate justification for reversing four decades of policy interpreting the Act." Appellees' Br. 40. The Department needed to satisfy a "higher burden," appellees submit, because the new regulation departed from prior rules and policies. *Id.*

Contrary to appellees' suggestion, there is no requirement that the agency's change in policy clear any "heightened standard." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009). Instead, we ask whether actions that are a departure from prior agency practice, like other agency actions, rest on a "reasoned explanation." *Id.* at 515. A "reasoned explanation," in the event of an alteration in approach, "would ordinarily demand that [the agency] display awareness that it *is* changing position," and "of course the agency must show that there are good reasons for the new policy." *Id.* But beyond that, the APA imposes no special burden when an agency elects to change course.

The Department's explanation for its updated rule meets those standards. In addition to reasoning that its original regulation misapplied congressional intent, the Department justified its shift in policy based on the "dramatic transformation of the home care industry since [the third-party-employer] regulation was first promulgated in 1975." 78 Fed. Reg. at 60,481. When Congress enacted the 1974

Amendments, the "vast majority of the private household workers were employed directly by a member of the household." Report to the Ninety-Third Congress by the Secretary of Labor: *Minimum Wage and Maximum Hours Standards Under the Fair Labor Standards Act* 28 (Jan. 19, 1973). By the time the Supreme Court decided *Coke* in 2007, the vast majority of home care workers were instead employed by third-party agencies. *See* Brief of the Alliance or Retired Americans, et al. as Amici Curiae in Support of Respondent at 6, *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007) (No. 06-593), 2007 WL 951137, at *6.

The duties of typical home care workers also changed. In the 1970s, many individuals with significant needs received care in institutional settings rather than in their homes. *See* 78 Fed. Reg. at 60,455. Since that time, there has been an increased emphasis on the value of providing care in the home and a corresponding shift away from institutional care. As the Department recognized even by 2001, "[d]ue to significant changes in the home care industry over the last 25 years, workers who today provide in-home care to individuals needing assistance with activities of daily living are performing types of duties and working in situations that were not envisioned when the companionship-services regulations were promulgated." 66 Fed. Reg. at 5482.

In light of the Department's reasoned explanation for its change in policy, we conclude that its departure from past practice was neither arbitrary nor capricious.

### D.

Appellees see a "strong[] indicat[ion]" in the administrative record that removing third-party-employed workers from the scope of the exemptions "will make home

care less affordable and create a perverse incentive for re-institutionalization of the elderly and disabled." Appellees' Br. 44. The Department disagreed with that characterization in the final rule, concluding that care recipients would be benefitted, not harmed, by the new regulations. *See* 78 Fed. Reg. at 60,459, 60,483. The Department's conclusion has ample support in the record.

When issuing the final rule, the Department acknowledged the existence of certain comments claiming that the proposed changes would harm home care workers and recipients. "[R]aising the cost of service provided through home care agencies," those comments suggested, "would incentivize employment through informal channels rather than through such agencies." 78 Fed. Reg. at 60,481. Some commenters also argued that expanding FLSA coverage would increase institutionalization of the elderly and would accelerate workforce turnover due to reduced work hours per shift. The Department rejected those contentions based on the administrative record.

Fifteen states, the Department explained, already "provide minimum wage and overtime protections to all or most third party-employed home care workers" who would come within the FLSA's scope under the Department's rule. *Id.* at 60,482. Yet commenters raising concerns about the rule's effects "did not point to any reliable data" from those states indicating that extension of minimum-wage and overtime protection to home care workers had led either to increased institutionalization or a decline in continuity of care. *Id.* at 60,483. To the contrary, some commenters noted an absence of evidence from those states suggesting any decline in access to (or quality of) home care services owing to the extension of minimum-wage and overtime protections to home care workers. *See* Addendum to Reply Br. 14, 21.

The industry's own survey indicated that home care agencies "operating in overtime and non-overtime states already have very similar characteristics," including "a similar percentage of consumers receiving 24-hour care." 78 Fed. Reg. at 60,503.

Appellees suggest that, even if the Department's conclusions are defensible with regard to the companionship exemption, we should still invalidate its revised approach with regard to the live-in exemption because only four of those fifteen states require payment of overtime to live-in domestic-service employees. Appellees' Br. 46. The Department was aware of those differences when making its decision, however, as it included a table in the final rule detailing the nuances of each state's overtime and minimum-wage laws. 78 Fed. Reg. at 60,510-12. Whether focused on fifteen states or a subset of four states, the Department's core observation—that commenters could point to no evidence indicating that extension of protections to home care workers in the relevant states effected an increase in institutionalization or workforce turnover—remains true.

The Department instead reasonably credited comments suggesting that the new rule would improve the quality of home care services. The "rule will bring more workers under the FLSA's protections," the Department concluded, which "will create a more stable workforce by equalizing wage protections with other health care workers and reducing turnover." *Id.* at 60,483. Increased protections will also "ensur[e] that the home care industry attracts and retains qualified workers," improving the quality of home care services. *Id.* at 60,548. The Department predicted that the revised regulations would benefit consumers "because supporting and stabilizing the direct care workforce will result in better qualified employees, lower turnover, and a higher

quality of care." *Id.* at 60,459-60. Those sorts of "[p]redictive judgements about areas that are within the agency's field of discretion and expertise are entitled to particularly deferential review, as long as they are reasonable." *BellSouth Telecomm., Inc. v. FCC*, 469 F.3d 1052, 1060 (D.C. Cir. 2006) (internal quotation marks omitted). The Department's judgments are.

## III.

In addition to challenging the third-party-employer regulation, appellees also challenge 29 C.F.R. § 552.6 (2015), the regulation defining the scope of "companionship services" encompassed by the Act's companionship-services exemption. Appellees contend that the Department's revised, and more limited, definition of companionship services conflicts with the FLSA and is arbitrary and capricious. We lack Article III jurisdiction to consider appellees' challenge.

In light of our disposition with respect to the third-party-employer regulation, appellees cannot show that the revised definition of companionship services causes their member companies injury in fact. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000). Appellees conceded before the district court that, until the court vacated the third-party-employer regulation, their members "lacked standing to pursue injunctive relief against [the enforcement of 29 C.F.R. § 552.6], because third-party employers were not allowed to avail themselves of the exemption under any definition of companionship services, and [appellees] were therefore not directly harmed by [§ 552.6]." Mem. in Supp. of Emergency Mot. for Temporary Stay of Agency Action and Req. for Expedited Consideration, No. 14-cv-967, Dkt. No. 23-1, at 1-2 (filed Dec. 24, 2014). Appellees make no effort in their appellate briefing to revisit

that understanding. Because we now reverse the district court's vacatur of 29 C.F.R. § 552.109, appellees cannot make use of the companionship-services exemption, and their members thus suffer no direct injury as a result of the Department's narrowed definition of companionship services. We therefore lack jurisdiction to consider appellees' challenge to that definition.

\* \* \* \* \*

For the foregoing reasons, we reverse the district court's judgments and remand for the entry of summary judgment in favor of the Department.

*So ordered.*