In the Supreme Court of Georgia

Decided:   Novemberr 23, 2015

S15Q1127.  ANDERSON et al. v. SOUTHERN HOME CARE SERVICES, INC. et al.

NAHMIAS, Justice.

In 2013, former employees of two in-home personal care companies sued their former employers, asserting that they had not been paid the minimum wage to which they are entitled under the Georgia Minimum Wage Law (GMWL), OCGA §§ 34-4-1 to 34-4-6.  The employers removed the case to a federal district court, which certified two questions to this Court:

> 1.  Is an employee that falls under an FLSA [Fair Labor Standards Act] exemption effectively "covered" by the FLSA for purposes of OCGA § 34-4-3 (c) analysis, thereby prohibiting said employee from receiving minimum wage compensation under the GMWL?
>
> 2.  Is an individual whose employment consists of providing in-home personal support services prohibited from receiving minimum wage compensation under the GMWL pursuant to the "domestic employees" exception articulated in OCGA § 34-4-3 (b) (3)?

As explained below, we answer both of these questions no.

1. According to the pleadings, named plaintiffs Margaret Anderson, Mary Dixon, Latasha Williams, and Kyonnie Sutherland (collectively, "the Employees") are former employees of defendants Southern Home Care Services, Inc. and Res-Care, Inc. (collectively, "the Employers"). Res-Care is a multi-state home care company, and Southern Home Care Services is one of its subsidiaries.[1] The Employees provided in-home personal support services to the Employers' medically home-bound clients, such as bathing, grooming, toileting, transfers, ambulation, and dressing, as well as other services related to the care of the clients, such as washing sheets and dishes. The Employees also performed some general household work for their clients, but as required by the Employers, such work made up no more than 20% of the total services the Employees provided. The Employees often had to drive between different client homes during the workday. They were not permitted to report this time or compensated for the time at an hourly rate.[2]

---

[1] On its website, Res-Care describes itself as "the largest privately-owned home care company," providing services in 42 states. See http://www.rescare.com/about/ (last visited Nov. 7, 2015).

[2] In their answer, the Employers allege that some employees were paid for travel based on mileage, but there is no argument that this amount meets the hourly minimum wage set in the GMWL.

2

On February 15, 2013, the Employees filed a lawsuit against the Employers in DeKalb County Superior Court, seeking to certify a class of similarly situated employees and alleging that the GMWL requires that the Employers pay at least $5.15 per hour for the Employees' unpaid workday travel time. The Employers removed the case to the federal district court for the Northern District of Georgia, invoking diversity jurisdiction. See 28 USC § 1332.[3] The Employers then filed a motion for judgment on the pleadings, arguing, among other things, that the Employers are subject to the federal Fair Labor Standards Act (FLSA), 29 USC §§ 201 to 219, and the Employees had not identified any FLSA exception, so the Employers were exempt from the GMWL under OCGA § 34-4-3 (c). On March 21, 2014, the district court dismissed the Employees' complaint on this ground, but the court permitted the Employees to file an amended complaint, which they did on April 11, 2014.

The amended complaint includes the allegation that the Employees are exempt from the minimum wage set in the FLSA under the "companionship services" exception, see 29 USC § 213 (a) (15), and therefore they are covered

---

[3] The Employees are citizens of Georgia. Southern Home Care Services is a Delaware corporation, and Res-Care is a Kentucky corporation. Both businesses have their principal place of business in Kentucky.

by the GMWL. The amended complaint seeks, among other things, recovery of unpaid minimum wages for any class member who worked for the Employers from November 21, 2004 onward, because, under an alleged tolling agreement, these employees have timely GMWL claims. See OCGA § 34-4-6 (requiring claims under the GMWL to be brought within three years of the GMWL violation). The Employers again moved for judgment on the pleadings, arguing first that because the Employers are subject to the FLSA, the Employees are not covered by the GMWL under OCGA § 34-4-3 (a), and second that the GMWL does not apply to the Employees because they were "domestic employees" exempted under OCGA § 34-4-3 (b) (3). On March 24, 2015, the district court certified the two questions set out above to this Court.[4]

2.    The Georgia Minimum Wage Law says:

Except as otherwise provided in this Code section, every employer, whether a person, firm, or corporation, shall pay to all covered employees a minimum wage which shall be not less than $5.15 per hour for each hour worked in the employment of such employer.

OCGA § 34-4-3 (a).[5] The Employees assert that under this provision, they must

---

[4] The district court has not yet decided the question of class certification.

[5] The GMWL was enacted in 1970 with a minimum wage of $1.25 per hour. See Ga. L. 1970, p. 153. The statute has been amended to increase the minimum wage amount twice, in 1984

4

be paid at least $5.15 per hour for the time they spent on the job traveling from one worksite to another. "Employer" is defined as "any person or entity that employs one or more employees," OCGA § 34-4-3.1 (a) (2), so it is clear that the Employers here are subject to the Georgia statute.

The Employers contend, however, that the Employees come within the exception to the GMWL found in OCGA § 34-4-3 (c), which says:

> This chapter shall not apply to any employer who is subject to the minimum wage provisions of any act of Congress as to employees covered thereby if such act of Congress provides for a minimum wage which is greater than the minimum wage which is provided for in this Code section.

The Employers argue that this exception applies because the Employees are "covered" by the federal Fair Labor Standards Act, which since July 24, 2007 provided for a greater minimum wage than the GMWL. The FLSA says:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
>> (1) except as otherwise provided in this section, not less than
>>> (A) $5.85 an hour, beginning on [July 24, 2007];
>>> (B) $6.55 an hour, beginning [July 24, 2008]; and

---

and 2001. See Ga. L. 1984, p. 1324 (increasing the amount to $3.25 per hour); Ga. L. 2001, p. 201 (increasing the amount to $5.15 per hour).

5

(C) $7.25 an hour, beginning [July 24, 2009.]

29 USC § 206 (a).[6]

It is undisputed that the Employers, as companies with employees and clients in multiple states, are enterprises engaged in commerce, and thus they are "subject to" the FLSA's minimum wage provisions. See 29 USC § 203 (b) (defining commerce to include "trade [or] commerce . . . among the several States or between any State and any place outside thereof"). See also 29 USC § 202 (a) ("Congress further finds that the employment of persons in domestic service in households affects commerce."). That is not, however, all that is required for the GMWL exception to apply. OCGA § 34-4-3 (c) looks not only to whether the employer is "subject to the minimum wage provisions of any act of Congress" but also to whether the employees in question are "covered thereby" – thereby referring, like "subject to" does for employers, to "the *minimum wage provisions* of any act of Congress," not to any other part of a

---

[6] From the earliest workday for which the Employees seek to recover (November 21, 2004) until July 24, 2007, the FLSA and GMWL minimum wages were the same – $5.15 per hour. See former 29 USC § 206 (effective Aug. 20, 1996 to July 24, 2007). So even if the Employers were correct (which they are not) in arguing that the Employees met the requirement in OCGA § 34-4-3 (c) of being "covered by" the FLSA, the FLSA did not "provide[] for a minimum wage which is *greater* than the minimum wage which is provided for in [the GMWL]" during that period, and so this GMWL exception did not apply during that time.

federal law.

The parties agree, and we assume for purposes of answering the certified questions, that from November 21, 2004 until at least January 1, 2015, the Employees fell under the "companionship services" exemption added to the FLSA in 1974, which exempts from the FLSA's minimum wage and maximum hour protections

> any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary [of Labor])[.]

29 USC § 213 (a) (15).[7]  During this time period, a federal regulation defined "companionship services" as including "meal preparation, bed making, washing of clothes, and other similar services."  29 CFR § 552.6 (effective until Jan. 1, 2015).  These services could include "general household work" as long as that work did not exceed 20% of the total weekly hours worked.  Id.  Another regulation defined "domestic service employment" as "services of a household nature performed by an employee in or about a private home . . . of the person

---

[7] The Employers do not suggest that the Employees have ever been covered by the minimum wage provisions of any federal statute other than the FLSA.

7

by whom he or she is employed. The term includes employees such as . . . nurses . . . [and] caretakers." 29 CFR § 552.3 (effective until Jan. 1, 2015).

Notwithstanding this definition limiting domestic services to work done at the home of the employer, a third regulation promulgated at the same time expressly applied the statutory exemption for employees providing companionship services to workers employed by third-party agencies like the Employers here, see 29 CFR § 552.109 (a) (effective until Jan. 1, 2015) – and in 2007, the U.S. Supreme Court upheld that specific regulation. See Long Island Care at Home, Ltd v. Coke, 551 U.S. 158, 168-171, 176 (127 SCt 2339, 168 LE2d 54) (2007) (holding that the pre-2015 version of 29 CFR § 552.109 was a permissible exercise of agency discretion and applying the FLSA companionship services exemption to a third-party home care employer). Thus, under 29 USC § 213 (a) (15) as interpreted in the pre-2015 version of 29 CFR § 552.109, the Employees concededly were not entitled to the minimum wage set by the FLSA during their time working for the Employers.[8]

---

[8] The U.S. Department of Labor has promulgated new regulations on this subject, which took effect on January 1, 2015. See 78 Fed. Reg. 60454, 60480-60483 (Oct. 1, 2013). These new regulations redefine "companionship services" as not including care activities like dressing, toileting, and transferring, see 29 CFR § 552.6, and expressly prevent third-party employers of care workers, including home care agencies like the Employers here, from claiming the companionship services

8

The Employers argue that even though the Employees fell under this FLSA exemption, they were still "covered" by the FLSA because the Employees were exempt only from the minimum wage and maximum hour requirements of the FLSA, meaning that they were covered by other FLSA provisions. But again, the text of OCGA § 34-4-3 (c) does not speak in terms of employees' coverage by the FLSA (or other acts of Congress) in general. Rather, it removes from the GMWL's protection employees who are "covered" by the *minimum wage provisions* of a federal statute like the FLSA if such act provides for a minimum wage greater than the GMWL's minimum wage. The Georgia exemption is squarely focused on employees who are exempted from the FLSA's minimum wage provisions, like the Employees in this case, and who thus could benefit from a state minimum wage, albeit one lower than the federal one.

The Employers suggest that this application of the plain meaning of

exemption, see 29 CFR § 552.109 (a). The new regulations were recently upheld on appeal. See Home Care Assn. of America v. Weil, 799 F3d 1084, 1094-1095 (D.C. Cir. 2015). Thus, it appears that, going forward, home health care workers (like the Employees) employed by third-party agencies (like the Employers) will be covered by the minimum wage (and maximum hour) requirements of the FLSA and, if that is correct, exempted from the GMWL under OCGA § 34-4-3 (a). Because this case involves a complaint for unpaid minimum wages arising before 2015, however, the changes in the federal regulations do not render the certified questions moot.

OCGA § 34-4-3 (c) will produce "absurd" results, because it means that the GMWL also applies to other categories of Georgia employees who are exempt from the FLSA's minimum wage provisions under 29 USC § 213, and in particular the large category of executive, administrative, professional, and teaching employees. See 29 USC § 213 (a) (1) (exempting "any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman").

This absurdity argument, however, fails to recognize that although the GMWL may notionally *apply* to many employees, the law will not actually *affect* most of these employees. Simply doing the math, it becomes clear that the minimal guarantee of $5.15 per hour will likely affect few, if any, bona fide executive, administrative, professional, or teaching employees. It is true that employees of this type are generally paid a set salary rather than hourly wages and that many of them frequently exceed the standard 40-hour workweek.[9]

_____

[9] We note in this respect that the GMWL does not have the same maximum hour protections imposed by the FLSA. The Georgia statute addresses only minimum pay. It does require that each employer "maintain records showing the hours worked by each employee and the wages paid to

10

However, even an FLSA-exempt professional working double-time year-round – 80 hours a week for all 52 weeks – would have to make less than $21,424 per year to run afoul of the GMWL and therefore trigger its protection. It hardly seems absurd that the General Assembly would want such a minimal level of wage protection for this category of employee.[10]

For these reasons, we answer the first certified question no.

3. The Employers argue that even if the Employees were not exempt from the GMWL under OCGA § 34-4-3 (c), they were exempt as "domestic employees" under § 34-4-3 (b) (2), which says that the GMWL "shall not apply with respect to . . . [a]ny employer of domestic employees." The Employees respond that they were not "domestic employees" as that term is used in the statute, because they were employed by third-party agencies and did not work

him," OCGA § 34-4-5, but this provision does not provide employees a cause of action if employers fail to comply. See OCGA § 34-4-6 (providing only an action for recovery when an "employer pays any employee a lesser amount than the minimum wage").

[10] For a specific example, take teachers. The minimum salary for Georgia teachers during the 2014-2015 school year was $31,586 for 10 months of employment. See Georgia Department of Education, State Salary Schedule, https://www.gadoe.org/Finance-and-Business-Operations/ Budget-Services/Documents/FY15SalarySchedule_official.pdf (last visited Nov. 7, 2015). To make less than the minimum wage set by the GMWL, a teacher making this base salary would have to work over 20 hours per day every single day from August through May. It is therefore unlikely that any school system will see GMWL claims from teachers. And if an indefatigable teacher were able to work all day and almost all night for 10 months straight, it is not absurd to think that the General Assembly would want her to have a raise.

11

in the homes of their employers.

In Long Island Care, the United States Supreme Court noted that the FLSA's references to "domestic service employment" and "companionship services" do not "expressly answer the third-party-employment question." 551 U.S. at 167-168. The Court therefore concluded that Congress left "the agency to work out the details of these broad definitions." Id. at 167. That may also be the case with the GMWL's use of the term "domestic employees." See OCGA § 34-4-2 ("The Commissioner of Labor shall administer and enforce this chapter [the GMWL] and may make rules and regulations for such administration."). But the Georgia Department of Labor has not by rule provided an interpretation of "domestic employees" as used in the GMWL. Consequently, this Court must apply the most natural and reasonable meaning of the term. See Deal v. Coleman, 294 Ga. 170, 172-173 (751 SE2d 337) (2013) ("[W]e must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would."). Cf. Tibbles v. Teachers Retirement System of Georgia, 297 Ga. 557, 563 (775 SE2d 527) (2015) (explaining that a court should defer to an administrative agency only when the legislature has committed the resolution of an ambiguity to the discretion of the agency and the

12

agency has resolved it by a proper and reasonable exercise of that discretion).

Sources providing everyday definitions of domestic employees and employment – including the Wikipedia definition cited to us by the Employers – limit such employment to work done in the home of the employer. See Wikipedia, https://en.wikipedia.org/wiki/Domestic_worker (defining "domestic worker" as "a person who works within the employer's household") (last visited Nov. 7, 2015); Mansur G. Abdullah et al., Encyclopedia Britannica, http://www.britannica.com/topic/domestic-service (defining "domestic service" as "the employment of hired workers by private households") (last updated Oct. 1, 2014).

Moreover, while the Georgia Department of Labor has not issued a rule regarding the GMWL's "domestic employees" exception, the agency has issued a regulation interpreting the similar term "domestic services" used in another employee-protection law – the employment security (unemployment benefits) statute. See, e.g., OCGA § 34-8-35 (l) ("The term 'employment' shall include domestic service in a private home . . . ."). The regulation explains:

> Domestic services include services of a household nature in or about a private home, local college club, or local chapter of a college fraternity or sorority, performed by individuals such as

13

> cooks, maids, baby-sitters, handymen, gardeners, and chauffeurs
> of automobiles for family use. *The domestic services must be
> performed by an individual in or about the private home*, local
> college club or local chapter of a college fraternity or sorority *of
> the person employing the individual*.

Ga. Comp. R. & Regs., r. 300-2-3-.10 (2) (a) (emphasis added). Under this definition, the Employees here were not providing "domestic services," because their work was not performed "in or about the private home . . . of the person employing the individual"; they instead worked in the homes of their Employers' clients.[11]

Similarly, after the FLSA was amended to expand coverage to domestic service employees in 1974, the U.S. Department of Labor promulgated regulations defining work done by domestic employees as work done in the home of their employers. See 40 Fed. Reg. 7404, 7404-7406 (Feb. 20, 1975). As discussed previously, one regulation defined "domestic service employment" as "services of a household nature performed by an employee *in or about a*

---

[11] The Employees also argue that they are not "domestic employees" because their work is not like the household services performed by "cooks, maids, baby-sitters, handymen, gardeners, and chauffeurs." Notably, the FLSA specifically refers to "companionship services" in its exemption, see 29 USC § 213 (a) (15), whereas the GMWL does not, see OCGA § 34-4-3 (b) (3). Because we conclude that the Employees are not "domestic employees" by virtue of their third-party employers, we need not decide whether they would otherwise be "domestic employees."

14

*private home (permanent or temporary) of the person by whom he or she is employed*." 29 CFR § 552.3 (emphasis added) (effective until Jan. 1, 2015). Another regulation explained that this definition of "domestic service employment" was derived "from 'the generally accepted meaning' of the term" as well as longstanding "regulations issued under the Social Security Act." 29 CFR § 552.101 (effective until Jan. 1, 2015) (citing S. Rep. 93-690, at 20 (1974) ("The term 'domestic service' employees is not defined in the [FLSA]. The Committee [on Labor and Public Welfare], however, has referred to the regulations issued under the Social Security Act, and the generally accepted meaning of domestic service relates to services of a household nature performed by an employee in or about a private home of the person by whom he or she is employed.")). See also 20 CFR § 404.1057 (b) (defining "domestic service" as used in the Social Security Act as "work of a household nature done by you in or about a private home."); 16 Fed. Reg. 13038, 13073 (Dec. 28, 1951) (interpreting the Social Security Act to exclude from "wages" cash paid for "domestic service in a private home of the employer"). The same FLSA regulation reiterated that "[t]he domestic service must be performed in or about the private home of the employer." 29 CFR § 552.101 (effective until Jan. 1,

15

2015).[12]

We also note that other states have defined similar terms consistent with our understanding of the meaning of "domestic employees." See, e.g., Wis. Adm. Code § DWD 272.06 (1) (a) ("'Domestic service employment' means all services related to the care of persons or maintenance of a private household or its premises, on a regular basis, by an employee of a private householder.");

[12] At the same time it expanded FLSA coverage to domestic employees, Congress also added an exemption for "companionship services" – an exemption not found in the GMWL. As mentioned in Division 2 above, the regulation interpreting this exemption stated specifically that it applied to "employees who are engaged in providing companion services . . . who are employed by an employer or agency other than the family or house holder using their services." 29 CFR § 552.109 (effective until Jan. 1, 2015). See also 40 Fed. Reg. 7404, 7407 (Feb. 20, 1975). This regulation, however, did not purport to alter the definition of "domestic service employment" set forth in 29 CFR §§ 552.3 and 552.101. In Long Island Care, the Supreme Court did not attempt to reconcile the three regulations, instead deferring to the agency's discretion in promulgating regulations and concluding that the inconsistency did not cause unfair surprise. See 551 U.S. at 168-171.

As discussed in footnote 8 above, the U.S. Department of Labor recently revised its regulations to say that third-party employers may *not* claim the minimum wage and maximum hour "companionship services" exemption. See 29 CFR § 552.109 (a); 78 Fed. Reg. 60454, 60480-60483 (Oct. 1, 2013). The Department also amended the definition of "domestic services employment" provided in 29 CFR §§ 552.3 and 552.101, removing the language specifying that domestic services must be performed in or about the home of the employer. See 78 Fed. Reg. at 60460-60461. According to the Department, this language was changed to effectuate the intent of Congress, which the Department now says was to "extend the FLSA coverage to all domestic employees whose 'vocation' was domestic service." Id. at 60461. See also 29 USC § 206 (f) (1) (providing minimum wage coverage to certain employees "employed in domestic service"). These amendments lend some support to the Employers' interpretation that domestic services need not be performed in the employer's home, but given the Department's new-found reliance on the congressional intent expressed in a 1974 statutory amendment, rather than on what the Department had long said was the "generally accepted meaning" of the phrase, we remain convinced that the most natural and reasonable reading of "domestic employee" as used in the GMWL – which was enacted in 1970 – is an employee who works at the home of her employer.

Haw. Rev. Stat. § 387-1 ("'Domestic service' means services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed."). Finally, our understanding comports with the way the Employers have apparently viewed a similar term used in the context of Georgia's worker's compensation law. Although OCGA § 34-9-2 (a) (2) says that the workers' compensation chapter of the Georgia Code does not apply to "domestic servants," the pleadings allege that the Employers have paid workers' compensation for employees like the Employees here.

For all these reasons, we hold that "domestic employees" as that term is used in OCGA § 34-4-3 (b) (2) must work in or about the homes of their employers, and the Employers are therefore not exempt from the GMWL under that provision. We answer the second certified question no.[13]

Certified questions answered. All the Justices concur.

---

[13] We note that although the second certified question was written broadly to address the applicability of the "domestic employees" exception to any "individual whose employment consists of providing in-home personal support services," we decide only whether the exception applies to the Employees in this case, that is, persons employed by third-party agencies to provide in-home services for the clients of those employers. We do not address whether home health care workers who are hired directly by the households they serve would come under this exemption. See also footnote 11 above.

17